**Eddie ARNOLD, Plaintiff in Error,**

**v.**

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.
June 7, 1973.

Certiorari Denied by Supreme Court
Oct. 15, 1973.

Seth W. Norman, Nashville, for plaintiff in error.

David M. Pack, Atty. Gen. William C. Koch, Jr., Asst. Atty. Gen., Nashville, Elmer Davies, Dist. Atty. Gen., William D.

Young, Jr., Asst. Dist. Atty. Gen., Franklin, for defendant in error.

## OPINION

O'BRIEN, Judge.

Defendant was charged with violation of T.C.A. Sec. 39–501, the arson statute, and upon a jury verdict of guilty was sentenced to not less than three years nor more than three years confinement in the Penitentiary, with judgment accordingly.

On this appeal, the first two assignments of error charge that the evidence preponderates against the verdict of the jury and in favor of the innocence of the accused; and that the verdict is contrary to the law and evidence governing this cause. The fourth assignment charges error to the trial judge for declining to direct a verdict.

Defendant's brief recognizes the long-standing rule in this State that the presumption of innocence which stood in defendant's favor at the trial level shifts and a presumption of guilt prevails here which must be overcome by a preponderance of the evidence. Hutchins v. State, 172 Tenn. 108, 110 S.W.2d 319; Rice v. State, Tenn. Cr.App., 475 S.W.2d 178; McGill v. State, Tenn.Cr.App., 475 S.W.2d 223; and this presumption stands even in circumstantial evidence cases, Ford v. State, 184 Tenn. 443, 201 S.W.2d 539.

Defendant's beauty salon was destroyed by fire on the evening of February 26th, 1972, after the fire, the body of a man was found inside the burned building. An automobile registered to this person, and containing items burgled from the building, was found parked outside the only entrance to the burned shop. Subsequent investigation disclosed that the fire had been purposely set by someone who soaked the salon's carpeting with gasoline. Two near empty two gallon cans were found in the vehicle. There was no sign of any forcible entry into the building. The lock-latch on the door was found to be in an open posi-

tion. It appeared that the deceased man in the building had been wearing some type of gloves. An employee in a nearby store observed the beauty shop on fire and saw two automobiles speeding away. One was subsequently identified as being operated by a person going to report the fire to the police department. No burglary tools were found either in the building or in the automobile of the deceased. A State's witness testified that he had been approached by defendant on three different occasions, all within three or four weeks prior to the fire, with a request to find someone to set fire to the building. This witness was offered $50.00, and was told by defendant that he would provide a key and the fire could be started by the use of gasoline while the fire department was off on a false alarm. A second witness testified that he had been approached by defendant about a week before the fire with an offer of money to burn the building. Defendant approached him on several occasions and raised an initial offer of $50.00 to the sum of $250.00 to accomplish the task. This witness was told that the door would be left unlocked and that he could take anything out of the store he wanted. It was developed that defendant was slightly behind in his rent, and owed two installments amounting to several hundred dollars on the purchase price for the establishment. He had obtained a fire insurance policy in the amount of $15,000.00 on February 10th, preceding the fire.

In defendant's testimony he averred that his business was good and that his income was improving. That he had had some calls within the thirty days, or so, before the fire threatening to burn him out or put him out of business. He denied approaching either of the State's witnesses about burning his building or soliciting anyone else to do so. He denied any acquaintance with the deceased man found in his shop.

It is argued on behalf of defendant that one of the strongest indications that the evidence preponderated in favor of his in-

nocence comes from the first report of the jury to the effect that, "seems to be the general consensus that we don't have enough proof." This statement was instantly disputed by another juror who informed the court that not all of them felt that way.

It is defendant's position that there is no evidence in this record to indicate that defendant ever had any connection with the deceased in this case, or that he, the deceased, was actually the arsonist.

The evidence indicates beyond speculation that the dead man was the arsonist. His body was found in a posture which indicated he was alive at the time the fire started, and apparently had been trapped inside the beauty shop, which was not large in area. The proof indicates there was something less than 800 square feet in a building which had 30 to 40 feet frontage on the street.

Defendant contends that the evidence upon which the State had to rely was circumstantial, and insufficient in itself to exclude every other reasonable hypothesis except that of guilt. We have fairly reviewed this record and examine the authorities cited on behalf of defendant.

■ The rules which apply in circumstantial evidence cases are well stated in Pruitt v. State, 3 Tenn.Cr.App. 256, 460 S. W.2d 385, and applying those rules to the circumstances involved here, it is not possible for this court to find from those cumulative incriminating circumstances that the evidence preponderates against the guilt of the defendant. The assignments challenging the evidence must be overruled.

■ No substantial argument is offered to sustain assignment number three to the effect, "That the verdict of the jury was such as to indicate passion, prejudice and caprice." The penalty for the offense of which defendant stands convicted is a minimum of three and a maximum of twenty-one years in the State Penitentiary. The jury assessed the minimum sentence provided by law. We do not find any evidence of passion, prejudice or caprice indicated by this verdict. See Pettyjohn v. State, 3 Tenn.Cr.App. 441, 463 S.W.2d 148.

Assignment of error number four must be overruled for the same reasons which apply to the overruling of assignments one and two. See Taylor v. State, 2 Tenn.Cr. App. 459, 455 S.W.2d 168.

By the fifth assignment it is contended the court erred in instructing the jury that in the event they did not reach a verdict it would be necessary for the cause to be tried at a later date.

■ The objected to statement was included in a colloquy between the trial judge and the jury when it appeared after some three hours deliberation that the jury had not yet been able to agree on a verdict. Taking the entire discourse between the court and the jury, we do not find the comments to be injudicious, or prejudicial to the defendant. This was not part of the charge of the court to the jury, and the attorneys had agreed that if there were any questions of law the court could help the jury with, they might be answered orally. These remarks were not a part of the instructions of the court to the jury, and were no more than that necessary and indispensable intercourse between judge and jury in the progress of a trial which relates to their conduct or action in other particulars than in regard to the rules of law by which they should be governed in rendering their verdict. We find the assignment to be without merit.

The judgment of the trial court must stand affirmed.

WALKER, P. J., and RUSSELL, J., concur.